IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARY J. QUEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-0926-CV-W-RED-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Mary J. Queen ("Queen") seeks judicial review of the Commissioner's denial of her request for Supplemental Security Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 13811 *et seq.*. Plaintiff has exhausted all of her administrative remedies, and therefore, pursuant to Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3), judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").[1]

### I. Background

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Additionally, the ALJ's decision within the administrative record fully sets forth his findings and as such will not be repeated herein in its entirety except to the extent necessary to address Plaintiff's arguments.

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

## II.  Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2000); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion.  *See Warburton*, 188 F.3d at 1050.  In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *See id.*  The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result.  *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999).  This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied.  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment.  *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975).  The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful

Case 4:04-cv-00926-RED   Document 32   Filed 03/15/07   Page 2 of 8

activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that she is disabled. If the claimant is not able to perform her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

### III. Procedural History

On October 30, 2001, Queen filed an application for Supplemental Security Income. A hearing was held, and a decision was rendered on January 24, 2004, denying her application. The Appeals Council of the Social Security Administration subsequently denied her request for review. Queen then appealed the denial to this Court, and on request of the Commissioner, the Court remanded the case back to the Commissioner in order to remand the case to an Administrative Law Judge. In that Order, the Court ordered that the ALJ shall (1) determine whether Queen can perform any of her past relevant work at step four of the sequential evaluation process, (2) elicit testimony from a vocational expert to determine what jobs, if any, an individual of Queen's age, education, and residual functional capacity can perform if the ALJ

-3-

finds she is unable to perform her past relevant work, (3) issue a new opinion, and (4) conduct any other proceedings necessary and consistent with the Court's opinion. (Doc. 17). A second hearing was held and a decision was rendered on December 14, 2005, once again denying Queen's application.

**IV. Analysis**

Queen raises three arguments in challenging the ALJ's finding of no disability. First, Queen contends the ALJ failed to derive a proper residual functional capacity because he erroneously discredited the opinion of treating physician Dr. Nicola Botley. Further, Queen argues the ALJ failed to consider her mental impairments when arriving at his residual functional capacity assessment. Finally, Queen argues the ALJ failed to properly consider the functional demands of her prior work in determining that she was capable of performing her past relevant work as a folding machine operator.

A. <u>Residual Functional Capacity Assessment</u>

Queen first argues the ALJ erred by failing to derive a proper residual functional capacity. In particular, she contends the ALJ improperly discredited the opinions of treating physicians. Queen also argues that in deriving the residual functional capacity, the ALJ failed to consider whether she could sustain employment.

According to SSR 96-8p, a residual functional capacity is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A 'regular and continuing basis' mean 8 hours a day, for 5 days a week, or an equivalent work schedule." 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). A residual functional capacity assessment must be based on all the relevant evidence in the case record, including

medical history, reports of daily activity, medical source statements, and effects of treatment. *Id.* at 34,477. While opinions of treating physicians are entitled to controlling weight, such opinions are not conclusive and "must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2006). An ALJ is warranted in discrediting a treating physician's opinion if it is inconsistent with or contradicted by other evidence in the record. *Weber v. Apfel*, 164 F.3d 431, 432 (8th Cir. 1999). Moreover, a statement from a medical source that the claimant is disabled or unable to work does not mean that the Commissioner will find the claimant disabled. 20 C.F.R. § 416.927(e)(1) (2006).

Queen first argues the ALJ failed to consider the opinions of Dr. Allen Parmet and Dr. James Stuckmeyer. Dr. Parmet opined that Queen was not "vocationally capable of employment," and Dr. Stuckmeyer concluded that Queen was "incapable of obtaining gainful employment." (Tr. 446). Because such opinions and conclusions of disability are solely the responsibility of the ALJ, *see Nelson v. Sullivan*, 946 F.2d 1314, 1316 (8th Cir. 1991), the ALJ did not err in failing to consider these opinions.

Queen further argues that the ALJ erred by dismissing the opinion of her treating physician, Dr. Nicola Botley. Queen argues the ALJ failed to consider the factors of 20 C.F.R. § 416.927(d) in determining how much weight to afford the opinion of Dr. Botley.

In his January 24, 2004, decision, the ALJ stated:

> The undersigned gives little weight to the opinion of Dr. Botley because it is conclusory and inconsistent with the signs and findings in the objective medical evidence of record, results of diagnostic tests, claimant's history of treatment and the failure of Dr. Botley to cite any specific evidence that would support her residual functional capacity assessment.

-5-

(Tr. 18-19). The Court finds that the explanation provided by the ALJ does indeed reflect a consideration of 20 C.F.R. § 416.927(d) factors, including whether any support for the opinion is presented and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 416.927(d)(3), (4) (2006). The Court finds that there is substantial evidence on the record as a whole to support the ALJ's decision to discount the opinion of Dr. Botley.

Finally, Queen contends the residual functional assessment of the ALJ fails to include any consideration of whether Queen is capable of sustaining employment. The Court notes, however, that the ALJ specifically asked Dr. Malcolm Brahms at the December 11, 2003, hearing whether Queen would be capable of working "eight hours a day, five days a week on a sustained basis;" Dr. Brahms answered in the affirmative (Tr. 265). Thus, the Court finds the ALJ properly considered whether Queen was capable of working on a regular and continuing basis when fashioning his residual functional capacity assessment.

### B. Failure to Consider Mental Impairments in Deriving Residual Functional Capacity

Queen next argues the ALJ erred by failing to consider any functional limitations imposed by her mental impairments in arriving at her residual functional capacity.

The Court notes that there is no indication in the record that Queen had any mental impairments. There is no evidence Queen has been diagnosed with mental limitations, and she did not testify at either hearing that she had any mental impairments. Thus, the Court finds the ALJ properly limited his residual functional capacity determination to the limitations and impairments found based on an evaluation of the entire record. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

### C. Assessing Claimant's Ability to Perform Past Relevant Work

-6-

Finally, Queen argues the ALJ failed to properly assess the functional demands of her prior work in concluding that she was capable of performing her prior work as a folding machine operator.

Step four of the evaluation process requires the ALJ to determine whether the claimant is capable of performing past relevant work. *See Nimick v. Secretary of Health and Human Services*, 887 F.2d 864, 866 (8th Cir. 1989). Under Social Security Ruling 82-62, in finding an individual capable of performing past relevant work, the ALJ's decision must contain the following findings of fact: (1) findings of fact as to the individual's residual functional capacity, (2) findings of fact as to the physical and mental demands of the past work, and (3) findings of fact that the individual's residual functional capacity would allow her to return to her past work. S.S.R. No. 82-62, Soc. Sec. Rep. 809, 811-812 (West 1983); *see also Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir. 1991). In evaluating the claimant's ability to perform her past relevant work, the ALJ must review the physical and mental demands of the work done in the past as *actually* performed by the claimant. 20 C.F.R. § 416.920(e) (2006); 61 Fed. Reg. 34,474, 34,476 (July 2, 1996).

Queen points to the vocational rehabilitation report of Terry Cordray to argue that her physical limitations would preclude her from performing her past work as a folding machine operator. In that report, the job of folding machine operator is described as requiring "extensive amount of bending" (Tr. 450). However, the Disability Report completed by Queen indicates that the job required no stooping, kneeling or crouching or any other movement where she would be required to bend at the waist or bend her legs (Tr. 420). And at the October 11, 2005, hearing, Queen was questioned directly by vocational expert George Robert McClellan, and she

-7-

made no statement as to any amount of bending that was required for her to perform the job of folding machine operator (Tr. 659-60). Thus, the Court finds that the ALJ did not err in concluding Queen would be able to return to her prior work as a folding machine operator based on his residual functional capacity assessment.

## V. Conclusion

Upon review of the record, the Court finds that substantial evidence on the record as a whole supports the ALJ's findings in this case. Moreover, the Court finds the ALJ fully complied with the Court's instructions in its Order on remand (Doc. 17). Accordingly, it is hereby ORDERED that the decision of the ALJ is AFFIRMED.

**IT IS SO ORDERED**.

DATE: March 15, 2007  /s/ Richard E. Dorr
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT